**B. F. AVERY & SONS PLOW CO. v. LIGHT-FOOT et al.**

No. 26030. Oct. 15, 1935.

Shirk, Danner & Earnheart and Michael S. Ward, for plaintiff in error.

Perry J. Morris, for defendants in error.

PER CURIAM. Defendants in error, plaintiffs below, brought this action to recover the amount paid in advance of delivery for a milking machine, which they alleged was sold to them by plaintiff in error, defendant below, through its agent, one J. R. Sample, who at the time represented that the machine would in all respects do the work required by the plaintiffs in milking their cows; that the said J. R. Sample, acting for and on behalf of the defendant, agreed that if the machine was not satisfactory and did not do the work for which it was bought, the purchase price would be returned; that the machine was not satisfactory and did not do the work for which they purchased it, and was worthless.

The case was tried to the court sitting as a jury. The plaintiff Clara Lightfoot took a nonsuit, and the cause proceeded with Hugh Lightfoot as the sole plaintiff. At the conclusion of the evidence the court made oral findings of fact to the effect that J. R. Sample was not the agent of the defendant, as alleged by the plaintiff, but that one Connelly was such agent and made the sale of the machine to the plaintiff, Sample merely assisting; that the machine never performed the services for which it was manufactured and intended and proved worthless. Judgment was rendered for the plaintiff.

The assignments of error are presented here under the sole proposition that there was no evidence to support the allegations in the petition. Plaintiff in error insists, first, that the court having found that Sample was not the agent of the defendant, as alleged in the petition, there was a fatal variance, and judgment should have been rendered for the defendant; and, second, that there was no sufficient competent evidence that Connelly was the agent of the defendant in the sale of the milking machine.

1. The case should not be reversed because of a variance between the allegations and the proof. In the first place, the allegation in the petition that the sale was made by Sample as agent of the defendant was wholly unnecessary. In an action against a principal on a contract executed by his agent, it is not necessary that the fact of agency be disclosed; the plaintiff may declare upon the contract as that of the principal. 2 C. J. 904; L. B. Menefee Lbr. Co. v. MacDonald, 122 Ore. 579, 260 P. 444, 447; Lander State Bank v. Nottingham, 37 Wyo. 50, 259 P. 181, 184; Lynch v. Smyth, 25 Colo. 103, 54 P. 634; Helena National Bank v. Rocky Mountain Tel. Co., 20 Mont. 379, 51 P. 829, 831; Armstrong v. Barceloux, 34 Cal. App. 433, 167 P. 895, 898.

The allegation of Sample's agency might be treated as surplusage, unless it had the effect of misleading the defendant, and there is no showing that such was the case.

In the second place, no variance between the allegations of the petition and the proof is to be deemed material unless it actually misleads the adverse party to his prejudice in maintaining his defense. Okla. Stat. 1931, sec. 245; Chautauqua State Bank v. Lewis, 99 Okla. 223, 226 P. 342; McMullen v. Holcombe, 125 Okla. 178, 256 P. 888; Throm v. Hollister, 92 Okla. 233, 219 P. 115; Guinan v. Readdy, 79 Okla. 111, 191 P. 602; Aetna B. & L. Ass'n v. McCarty, 78 Okla. 187, 189 P. 357; Scott v. Jordan, 55 Okla. 708, 155 P. 498; Chicago, R. I. & P. Ry. Co. v. Bankers National Bank, 32 Okla. 290, 122 P. 499. The plaintiff testified that Sample and Connelly came to his home to sell him a milking machine and "they" told him if it did not work and give satisfaction, he did not have to keep it. The negotiations between the three resulted in a sale, and the money was paid to Sample, at Connelly's direction; Sample later delivered the machine to him, and Sample came out afterwards and tried to adjust the machine when it was found that it would not work. Naturally the plaintiff thought Sample was the agent who sold the machine, and so alleged in his petition. At the trial Sample testified that he was merely assisting Connelly in making the sale, and that he gave Connelly all except $10 of the money paid to him by the plaintiff, and that Connelly made out the order for the machine and sent it to the defendant. Defendant's contention during the trial was that no agency whatever was involved in the transaction, but that it had sold the machine to Sample and had no contractual relations with the plaintiff. Although the defendant did not produce the original order for the machine, it must have had it in its possession, and was better informed than the plaintiff as to the exact details of the contract sued on, and therefore could not be prejudiced by the variance between the allegation that Sample was the agent and the proof that Connelly was. Chicago, R. I. & P. Ry Co.

v. Bankers National Bank, 32 Okla. 290, 295, 122 P. 499, 502. At any rate, the defendant did not attempt to show the court that it was misled, or in what respect it was claimed to be misled, as required by the statute. Okla. Stat. 1931, sec. 245. Nor did the defendant plead surprise and ask for a continuance.

We attach no importance to the fact that the plaintiff did not ask, nor did the court require, that the petition be amended to conform to the proof. A judgment will not be reversed because of a variance between the allegations of the petition and the facts proved on the trial, if it is a case where an amendment to the petition ought to be allowed to conform to the facts proved; the court will consider such amendment as having been made. First National Bank v. Langston, 32 Okla. 795, 124 P. 308; Love v. Kirkbride Drilling & Oil Co., 37 Okla. 804, 812, 129 P. 858; Harris v. Newcombe, 56 Okla. 741, 745, 156 P. 666, 667; McMullen v. Holcombe, 125 Okla. 178, 179, 256 P. 888, 889.

2. The case having been tried to the court without the intervention of a jury, its findings will not be disturbed if there was substantial competent evidence to support them, although incompetent evidence may have been introduced, the presumption being that the court disregarded such incompetent evidence, unless the contrary is shown. Kennedy v. Pawnee Trust Co., 34 Okla. 140, 126 P. 548; Johnson v. Alexander, 66 Okla. 128, 167 P. 989; Mid-West Ins. Co. v. Shrader, 99 Okla. 17, 225 P. 541; Security Nat. Bank v. Martin, 113 Okla. 295, 241 P. 812.

So, as to the second contention made by plaintiff in error, the inquiry is whether there was such substantial competent evidence of the fact that Connelly was the agent of the defendant in making the sale to the plaintiff. We have carefully read the entire record, and have no hesitancy in saying that there was such evidence. The plaintiff testified that about September 15, 1930, Sample and Connelly came to his home, about 15 miles from Shattuck, to sell him the machine; that he bought it on "their" representation that it would do the work required, and on "their" guaranty that if the machine did not give satisfaction they would return his money; that he thereupon, at Connelly's direction, gave his check to Sample so that Sample could get his commission out of it; that the machine was delivered by Sample about two or three weeks afterwards; that later Sample came out and put the machine up, but they could not make it work, and one Matthews, who worked for a hardware store, came out twice and tried to make it run, but without success. The first time he came he took a piece out of the machine and later came back and put it in again, but still it would not work.

J. R. Sample testified that he had a contract to sell feed grinders and cream separators for the defendant; that Connelly was selling milking machines for it, and came to him, Sample, at Shattuck, on two occasions, wanting him to help in the sale of the machines; that on the second occasion the two went to plaintiff's home, and there Connelly made the sale under circumstances about as testified by the plaintiff, except that Sample denied that he had anything to do with the sale other than to bring the parties together and for which he received a commission of $10; that he did not sign the order for the machine, but that Connelly wrote it out and sent it to the company; that the machine came by express to him at Shattuck, and at Connelly's direction he delivered it to the plaintiff; that he attempted to make it work, but was unable to do so, and wrote the defendant about the matter, and later Matthews came to adjust the machine, took out the reduction gear, got a new one and replaced it, but it still would not work. He also testified that he had gotten his agency contract for the sale of the defendant's feed grinders and cream separators through Connelly, who "had the blanks and everything to make contracts," and who made out the papers and sent them, and the contract came back accepted for the two articles mentioned. He referred to the time Matthews "came to Shattuck," and also to the time when the defendant "sent this man Matthews" to adjust the machine.

The plaintiff introduced in evidence a letter from the defendant, written in response to one from plaintiff's attorney demanding a refund of the purchase price, in which the defendant states:

"We do not think that Mr. Lightfoot is from the defendant, written in response to place the Ford milking machine in a workable or usable condition. We have on several occasions had one of our men to see about this machine. At one time he went there and found the machine full of water, and that something had caused the reduction gears to strip, and we had a new set of reduction gears shipped and our representative stated that he left the machine working in good shape. * * * We have sold a great many Ford milking machines during the past year, which

have given satisfaction to the purchasers, and we are satisfied that there is nothing wrong with the machine which we sold to Mr. Lightfoot, and that it fairly was represented."

Graham Blanton, testifying by deposition for the defendant, stated that during 1930, he was manager of the defendant's branch office at Kansas City, Mo.; that on October 6, 1930, the defendant shipped a milking machine to J. R. Sample & Son at Shattuck, but that it was an outright sale. It will be noted that the date of the shipment was about three weeks after the plaintiff had bought and paid for the machine. He also testified on cross-examination that when complaint was made that the machine would not work, the company sent a man to see it, and found that in assembling it they let some part get into the reduction gear, "and we had a new reduction gear shipped them from the factory," and that subsequently "we sent a man one or two times." This testimony, in connection with Sample's references to Matthews, seems to dispose rather conclusively of the assumption of counsel for plaintiff in error that Matthews was working for J. R. Sample & Son Hardware Company, which is nowhere mentioned in the record, and establishes to our satisfaction that he was the representative of the plaintiff in error. There is not a scintilla of evidence that he was the agent of Sample; on the contrary, he was the only man, aside from Sample and his son, who ever attempted to adjust the machine, so far as the record shows; he was the man who took the reduction gear away, and he was the man who returned it. He therefore must have been the man referred to in Blanton's testimony and in the letter above quoted as having been sent by the defendant. Counsel also thoroughly misconceives the effect of Sample's testimony that Connelly "had the blanks and everything to make contracts and they made it out for me and sent it in." He was not, as assumed by counsel, speaking of the contract for the purchase of the milking machine, but referring to the contract by which he testified he became the agent of the defendant for the sale of feed grinders and cream separators.

It is well settled that the fact of agency may be proved by circumstantial evidence, as well as direct testimony, and the circumstances shown in this case, together with the admissions of the defendant in its letter to the attorney for the plaintiff, made the question of the agency of Connelly one for a jury to determine on conflicting evidence, and the finding of the court sitting as a jury

will be given the same binding effect as the verdict of a jury.

The case is affirmed.

The Supreme Court acknowledges the aid of Attorneys Powell Clayton, William O. Blake, and Glenn Alcorn in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Clayton and approved by Mr. Blake and Mr. Alcorn, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.